# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| ELMI ABDI | ) | |
| | ) | |
| v. | ) | NO. 3:15-1162 |
| | ) | |
| CHERRY LINDAMOOD, WARDEN | ) | |

**TO: Honorable Aleta A. Trauger, District Judge**

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered December 2, 2016 (Docket Entry No. 42), the above captioned Petition for a writ of *habeas corpus* filed under 28 U.S.C. § 2254 was referred to the Magistrate Judge for further proceedings under 28 U.S.C. § 636(b)(1) and Rule 72 (b) of the Federal Rules of Civil Procedure.

After review of the Petition and Respondent's Answer, the undersigned respectfully recommends that the Petition be denied and this action be dismissed.

## I. BACKGROUND

Elmi Abdi ("Petitioner") is a state inmate of the Tennessee Department of Correction who is confined at the South Central Correctional Facility in Clifton, Tennessee. On September 22, 2009, a jury in Davidson County, Tennessee, found him guilty of one count of attempted aggravated robbery. For this crime, he was sentenced to ten years of imprisonment, to be served consecutive to sentences for others crime of which Petitioner had been previously convicted.[1]

---

[1] *See* Trial Technical Record (Docket Entry No. 47-1) at 28; Sentencing Hearing Transcript (Docket Entry No. 47-6) at 9-12.

The conviction at issue arose out of events that occurred on the morning of January 1, 2008, when Petitioner entered a hotel in Nashville, Tennessee, acted as if he had a gun in his pocket, and attempted to rob the hotel.[2] Petitioner did not testify at trial, and the evidence against him consisted primarily of the victim's testimony, the testimony of the police officer who interviewed Petitioner, and parts of the video of Petitioner's police interview. The Tennessee Court of Criminal Appeals hearing Petitioner's direct appeal from his conviction provided the following summary of the evidence presented at Petitioner's trial:

> The victim testified that on January 1, 2008, she was the front desk clerk at the Extended Stay America Hotel located at 2525 Elm Hill Pike, Nashville, Tennessee. On that day, she arrived at work at 7:00 a.m. Before she could remove money from the hotel's safe to put in her register for the day, she heard the door open and went to the front desk. The victim testified that the defendant was standing at the counter, wearing a stocking cap, a gray fleece jacket, and dark sunglasses. She said that he demanded that she give him all of the money. He had his hand in a pocket of his jacket, and she said that "he lifted his hand up towards my head like he had a gun." She told him that she had not taken the money out of the safe yet and showed him the empty register drawer. He demanded that she let him behind the counter and said, "I ought to kill you." The victim testified that after he said that, she began moving to the side door and then turned and ran through the back door. She said that she was afraid that he would shoot her in the back when she turned to run. She went up to the third floor, and knocked on a guest's door. The guests let her in, and they called the police. When the police arrived, she told them what happened. The following day, a detective at the Hermitage Precinct showed her a set of photographs. She identified a photograph of the defendant as the person who tried to rob her. She also identified the defendant in the courtroom.
>
> On cross-examination, the victim denied that the man who tried to rob her was black. She said that she recalled the description that she gave to the police but did not recall telling the police that the man was black.

---

[2] On January 1, 2008, Petitioner also robbed another hotel. Although both crimes were part of the same indictment, Petitioner's motion to sever trial of the offenses was granted. On February 23, 2009, Petitioner was convicted of aggravated robbery for the related offense and was sentenced to thirty years imprisonment. *See Abdi v. State*, 2012 WL 5378257 (Tenn.Crim.App. Oct. 26, 2012). His petition for federal *habeas corpus* relief from that conviction was unsuccessful. *See Abdi v. Johnson*, 3:14-0007 (petition dismissed May 27, 2014).

2

On re-direct examination, the victim stated that she was "a hundred percent" certain that the defendant was the person who tried to rob her. She said that she would not describe the defendant as a black man.

Metropolitan Nashville Police Officer Geoffrey Thiede testified that he responded to an attempted robbery call at 2525 Elm Hill Pike on January 1, 2008. He spoke with the victim and filled out an incident report. He said that the description he recorded was "a generic description of a male black, approximately twenty-five to thirty years old, 5# 9#, 185 pounds." Officer Thiede noted in his report that the suspect had "his left hand ... in the pocket of the fleece jacket to possibly give [the victim] the inference that maybe he had a weapon in his hand."

On cross-examination, Officer Thiede agreed that the victim described the suspect as a black male. He further agreed that he indicated in his report that there was no weapon involved. He recalled that the victim told him that the hotel had video surveillance but that she did not have access to it. He did not know whether detectives followed up on the video surveillance.

Metropolitan Police Detective James Chastain testified that he prepared a photographic lineup including the defendant's photograph.

Metropolitan Nashville Police Detective Jeff Ball testified that he was the lead detective in this case. He spoke with the victim on January 2, 2008, and showed her a photographic lineup. She identified the defendant as the person who tried to rob her. He learned that the hotel had video surveillance, and the police collected a videotape from the hotel. Detective Ball testified that the Tech Support Unit viewed the videotape, but the attempted robbery was not captured on the videotape. He said that the police received an anonymous call that the defendant was at the Breckinridge Apartments on Plus Park Boulevard. The police arrested the defendant in that area. Detective Ball spoke to the defendant at the Hermitage Precinct. The defendant signed a rights waiver. He told the detective that he did not take any money and that it was his hand in his pocket. The defendant said he might have attempted it and that he was drunk. He explained that he lost his memory when he was drunk. Detective Ball said that he had a surveillance video from a business three to four miles away from the hotel that captured the defendant at 9:08 a.m., according to the time on the videotape. The detective said that, based on his investigation, the clock on the videotape was one hour off. The defendant identified himself in the video. The detective testified that the clothing worn by the defendant in the video matched the description given by the victim.

On cross-examination, Detective Ball agreed that the defendant never specifically said that he attempted to rob anyone at the hotel.

3

> The state recalled the victim, who testified that the defendant did not smell of alcohol, speech was not slurred like a drunk person, nor did he walk abnormally.

*State v. Abdi*, 2011 WL 2570404, at *1-2 (Tenn.Crim.App. June 29, 2011) ("*Abdi I*").[3]

## II. STATE POST-TRIAL PROCEEDINGS

Upon direct appeal, Petitioner's conviction was affirmed by the Tennessee Court of Criminal Appeals, and his request for permission to appeal to the Tennessee Supreme Court was denied. *Abdi I*. The state appellate court found no merit in Petitioner's assertion (1) that there was insufficient evidence to support his conviction and (2) that the trial court erred in his sentencing. *Abdi I*, at *3-5. The court also found that Petitioner, by failing to file a timely motion for a new trial, had waived his claim that the trial court erred by admitting a video of his interview with the police. *Id*. at *4.

Petitioner then filed a *pro se* petition for post-conviction relief, raising five allegations of ineffective assistance of trial counsel.[4] He was appointed counsel and filed an amended petition, raising allegations of ineffective assistance of trial and appellate counsel.[5] After an evidentiary hearing, the post-conviction court denied relief, and Petitioner sought an appeal. *Abdi v. State*, 2013 WL 6081461 (Tenn.Crim.App. Nov. 18, 2013) ("*Abdi II*").[6] In his appeal, Petitioner argued that his trial counsel was ineffective for: (1) failing to compel the production of a surveillance video of the crime scene; (2) failing to adequately challenge the admission at trial of the video of his interview

---

[3] *See* Docket Entry No. 47-11.

[4] *See* Post-Conviction Relief Technical Record (Docket Entry No. 47-14) at 20-21.

[5] *Id.* at 29-32.

[6] *See* Docket Entry No. 47-18.

4

with police; and (3) failing to file a timely motion for new trial. *Id*. at *1. The state appellate court found that Petitioner's first two grounds failed to support post-conviction relief but granted Petitioner relief on his third ground, finding that his trial counsel was deficient in failing to file a timely motion for new trial and that Petitioner was presumptively prejudiced by that deficiency because it resulted in a waiver on appeal of Petitioner's claim that the trial court erred by admitting a video of his interview with the police. *Id*. at ** 6-9. Petitioner was granted relief in the form of a remand in order to permit him to pursue a delayed appeal. *Id*. at 10.

Upon Petitioner's delayed appeal, his conviction was affirmed by the Tennessee Court of Criminal Appeals, and his request for permission to appeal to the Tennessee Supreme Court was denied. *State v. Abdi*, 2015 WL 894830 (Tenn.Crim.App. Mar. 2, 2015) ("*Abdi III*").[7] In the delayed appeal, Petitioner argued that the trial court erred by admitting into evidence a redacted version of the video of Petitioner's police interview instead of the full version. Petitioner contended that the redacted video was played in five separate clips, which did not give the jury the full context of his interview and which made it unclear which offense Petitioner was discussing in the interview. *Id*. at *4. The appellate court found that Petitioner was not entitled to relief on this ground because the trial court, which had weighed the possibility of that prejudice to the Petitioner would occur if the full video was played because of his references in the full video to other robberies, had not abused its discretion by admitting only the redacted video. *Id*. at ** 4-5.

---

[7] *See* Docket Entry No. 47-23.

## III. FEDERAL HABEAS CORPUS PETITION

After failing to obtain relief in the state courts, Petitioner filed the instant *pro se* petition on November 4, 2015, seeking *habeas corpus* relief under 28 U.S.C. § 2254. *See* Petition (Docket Entry No. 1-1). He lists three grounds for relief.

Petitioner's first ground for relief is that he was not provided with effective assistance of counsel "both at trial and in state collateral proceeding(s)." *Id*. at 4-5. Although Petitioner's assertions of ineffective assistance are not clearly identified as separate claims, he appears to set out four claims, each of which involved counsel's conduct with respect to the video of Petitioner's police interview:

(a) trial counsel failed to file a motion "to timely obtain [Petitioner's] video-recorded statement to adequately challenge its introduction into evidence." Petitioner contends that counsel's failure to obtain the video also prevented counsel from "further investigation" and from impeaching "any false, contradictory, or misleading statements by police interview of witnesses." *Id*. at 4.;

(b) trial counsel failed "to argue that, pursuant to Rule 106," that the entire video, rather than just portions of the video, should have been admitted. *Id*.;

(c) trial counsel failed to request a jury-out hearing to attempt to refresh the police interviewer's recollection by having him view the videotape;

(d) counsel failed "to address the trial court's error in prohibiting the introduction during the State's case-in-chief of the recording of the investigator's statements to the Petitioner immediately prior to his confession. In light of the evidence adduced at trial during the guilt/innocence phase of the Petitioner's trial, the trial court's error affirmatively affected the jury's verdict." *Id*.

Petitioner's second ground for relief is based on an allegation that his appointed counsel in the post-conviction relief proceeding was ineffective for failing to include in the amended petition for post-conviction relief claims that Petitioner had raised in his original *pro se* petition. *Id*. at 5-6. It is unclear whether Petitioner intends to raise this ground as an independent ground for *habeas corpus* relief or includes it in order to preemptively rebut an assertion by Respondent that any of his other grounds for relief have been procedurally defaulted.[8]

Petitioner's third ground for relief centers on his allegation that his trial counsel acted ineffectively with respect to obtaining the "the surveillance video purporting to be the crime scene video. *Id*. at 6. Petitioner contends that the video was not properly preserved and provided to his defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Id*. at 6. Specifically, he asserts:

> [t]he Petitioner' Appellate Court Panel failed/did not rule on the issue that his trial attorney was ineffective for failing to challenge the failure of the State (NMPD) to preserve exculpatory evidence in violation of Brady, i.e., the surveillance video purporting to be the crime scene video,

as well as:

> [t]he suppression by the prosecution of evidence favorable to the Petitioner violated his due process right because the evidence was material either to his guilt or punishment. Several time[s] before and during trial and appeal Petitioner specifically requested to obtain any and all Brady material in the possession of the State or its agents.

*Id*. at 6.

---

[8] Petitioner's statement of ground two is "[w]hether appellant has a right to effective assistance of counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id*. at 5. He further states "[s]uch a right may provide cause for a procedural default in a post-conviction proceeding . . . ." *Id*.

## IV. ANSWER

In its answer, Respondent argues that each of the grounds for relief raised by Petitioner lacks merit. *See* Docket Entry No. 49. Respondent supports it answer with the state court record from Petitioner's trial, his direct appeal, his post-conviction relief proceedings, and his delayed appeal. *See* Docket Entry No. 47. Respondent first argues that Petitioner does not state a ground for relief by his assertion that his post-conviction relief counsel was ineffective because there is not a constitutional right to the effective assistance of counsel in state post-conviction relief proceedings. Petitioner next argues that some of Petitioner's allegations that his trial counsel was ineffective are claims that have been procedurally defaulted and that Petitioner cannot show cause or prejudice to excuse the default. Finally, Respondent argues Petitioner fails to show that he is entitled to *habeas corpus* relief for any of his properly exhausted claims because he cannot show either that the state court reached a decision on these claims that was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## V. STANDARD FOR *HABEAS CORPUS* REVIEW

Under Section 28 U.S.C. § 2254, a federal court may "entertain an application for a writ of *habeas corpus* in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based solely upon alleged errors or misapplication of state law do not support federal *habeas corpus* relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Cooey v. Coyle*, 289 F.3d 882, 902 (6th Cir. 2002). In order to

respect state court rulings in criminal cases and to preserve federalism principles, *see Martinez v. Ryan*, 566 U.S. 1, 9 (2012), before a federal court rules on the merits of a petition seeking collateral *habeas corpus* relief under 28 U.S.C. § 2254: (1) the petitioner must have exhausted his available state remedies for his claims, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1)(A); and, (2) the petitioner's claims must not be procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

The doctrine of exhaustion requires state prisoners to fully and fairly present their claims to the state courts as a matter of federal law before raising those claims in a federal *habeas corpus* petition. 28 U.S.C. § 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001). In order to exhaust a claim, the petitioner must have given the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin*, 541 U.S. at 29. The exhaustion requirement is satisfied if a petitioner invokes one complete round of the State's established appellate review process. *O'Sullivan*, 526 U.S. at 839-40, 845. In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (*quoting* Tenn. Sup. Ct. R. 39).

For claims that have been exhausted by being presented to the state courts and reviewed on the merits, the language of 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), applies and provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

9

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Bell v. Cone*, 535 U.S. 685, 693 (2002), the Supreme Court reiterated that the AEDPA modified a federal court's role in reviewing state prisoner applications for relief under Section 2254 "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law." By its terms, Section 2254(d) bars *habeas* relief for a claim adjudicated on the merits in state court unless one of the exceptions in Sections 2254(d)(1) or (d)(2) is satisfied. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). As the Supreme Court has advised, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). It is the petitioner's burden to show entitlement to *habeas corpus* relief. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under Section 22545(d)(1), a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies [that principle] to the facts of the

10

particular case." *Bell*, 535 U.S. at 694. "Even if a federal court could determine that a state court incorrectly applied federal law, the court still could not grant relief unless it also finds that the state court ruling was unreasonable." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

To obtain relief under Section 2254(d)(2), the federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 Fed.App'x 234, 236 (6th Cir. 2002). When a federal court reviews the reasonableness of factual determinations made by a state court, the factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003).

For claims that have not been reviewed on the merits but have been procedurally defaulted in the state courts, the path to *habeas corpus* relief is even more demanding. A claim is procedurally defaulted if it was presented to the state court but was denied by the state court because of the application of a state procedural rule, *Martinez*, *supra*, or if the claim was not fully and fairly raised in the state court and the petitioner no longer has state remedies available by which to pursue the claim. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012). In the latter situation, the claim is viewed as technically exhausted, but the petitioner's failure to raise the claim has prevented the claim from being reviewed by the state court and, thus, the principles of procedural default apply. *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009); *Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002).

To excuse a procedural default and permit consideration of the merits of a procedurally defaulted claim, the petitioner must show "cause for the default and prejudice from the asserted error." *House v. Bell*, 547 U.S. 518, 536 (2006); *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir.

11

2015). The burden of showing cause and prejudice is on the *habeas* petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999). A petitioner may establish cause by "show[ing] that some objective factor external to the defense" - a factor that "cannot be fairly attributed to" the petitioner - "impeded counsel's efforts to comply with the State's procedural rule." *Davila v. Davis*, _ U.S. _, 137 S. Ct. 2058, 2065 (2017) (citations omitted). To establish prejudice, "a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (*quoting Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991)) (internal quotation marks omitted).

Alternatively, the petitioner may show that a fundamental miscarriage of justice will result if there is not federal review of a claim. *House*, *supra*. The fundamental miscarriages of justice exception, however, is narrow and applies only where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (*citing Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). There is a stringent standard for establishing a credible claim of actual innocence, and actual innocence means factual innocence, not mere legal insufficiency or legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Schlup v. Delo*, 513 U.S. 298, 321 (1995).

## VI. ANALYSIS AND CONCLUSIONS

Upon consideration of the entire record, it appears that an evidentiary hearing, which has not been requested by Petitioner, is not required in this matter. Therefore, the Court should dispose of

the Petition as the law and justice require. *See* Rule 8, Rules Governing Section 2254 Cases; 28 U.S.C. § 2254(e)(2).

A. Ineffective Assistance of Post-Conviction Counsel (Ground 2)

To the extent that Petitioner seeks to set forth an independent ground for relief based upon the allegation that his post-conviction counsel was ineffective, he fails to present a legally cognizable basis for federal *habeas corpus* relief. There is no federally protected right to the assistance of counsel for a convicted petitioner who is pursuing a discretionary or collateral review of his conviction. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Accordingly, alleged errors by counsel in state collateral relief proceedings do not present a basis for *habeas corpus* relief under Section 2254. *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *Kirby v. Dutton*, 794 F.2d 245, 246-48 (6th Cir. 1986). *See* 28 U.S.C. 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

B. Ineffective Assistance of Counsel (Ground 1)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that, in order to successfully claim that a criminal defense lawyer's assistance was so ineffective as to violate the Sixth Amendment, a petitioner must make two showings. "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. A deficiency occurs when counsel acted in a way that falls below an objective standard of reasonableness under prevailing professional

13

norms. *Id*. at 688. As to the prejudice inquiry, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Taylor*, 529 U.S. 362, 391 (2000).

In a federal *habeas corpus* proceeding under Section 2254, relief on a claim of ineffective assistance of counsel may not be granted unless the petitioner shows that the state court's decision on the claim was contrary to federal law, involved an unreasonable application of such law, or was based on an unreasonable determination of the facts in light of the record before the state court. *Harrington*, 562 U.S. at 100. Thus, the question to be resolved is not merely whether a petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard [to a petitioner's claims] was unreasonable." *Harrington*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted).

Turning now to Petitioner's claims, none of the four alleged instances of ineffective assistance of counsel set out by Petitioner in support of this ground for relief, Claims (a), (b), (c), and (d), were specifically presented to the state courts as the same claims and in the same language as they have been stated in his petition. Because Petitioner no longer has an avenue to raise these

14

claims in the state courts, these claims have been procedurally defaulted. *See Alley v. Bell*, 307 F.3d 380 385 (6th Cir. 2002). However, parts of Claims (a) and (d), can be deemed, with a liberal construction, to set out a claim that his trial counsel failed to adequately challenge the introduction at his trial of the redacted video of his police interview. This claim is sufficiently similar to claims for relief that were raised and heard in his post-conviction relief proceeding and in his delayed appeal that the claim can be viewed as exhausted. For the sake of completeness, the Court will address this claim as it if were clearly stated in the petition. As set out below, none of Petitioner's claims, whether exhausted or procedurally defaulted, support *habeas corpus* relief.

With respect to Petitioner's exhausted claim, in addressing the claim that his trial counsel failed to adequately challenge the introduction into evidence of the redacted video of his police interview, the Tennessee Court of Criminal Appeals articulated and discussed the standard for proving ineffective assistance of counsel as established by the Supreme Court in *Strickland*. *Abdi II,* at ** 5-6. Having articulated the appropriate standard, the state appellate court then addressed Petitioner's claim and found that the record showed that trial counsel had submitted a motion *in limine* to prohibit the State from playing the interview video at trial but the motion was rejected. *Id*. at * 7. The state appellate court then noted that a transcript of the hearing on the motion *in limine* had not been provided and that Petitioner had not offered any substantive argument as to how counsel had performed inadequately. *Id*. The state appellate court finally concluded that Petitioner had not met his burden of showing that trial counsel had acted deficiently. *Id*.

The facts as found and relied on by the state appellate court are entitled to a presumption of correctness that has not been rebutted by Petitioner. *Mitchell*, *supra.* Indeed, Petitioner has not set forth any fact based argument for why counsel acted ineffectively or what counsel could have done

15

differently to challenge the introduction of the video. Further, Petitioner has not shown how the state appellate court's application of *Strickland* to the facts before it and its ultimate conclusion that Petitioner had not established deficient performance by his trial counsel was contrary to established law, an unreasonable application of the law, or based upon an unreasonable determination of the facts. In the absence of a showing that the state appellate court's application of *Strickland* to Petitioner's claim was unreasonable, Petitioner is not entitled to *habeas* relief on the basis of this claim.

Turning to the procedurally defaulted claims, Petitioner has not responded to Defendant's answer with an argument that cause and prejudice exists to excuse the procedural defaults of these claims. However, his petition appears to allege that the ineffective assistance of post-conviction counsel amounted to cause to excuse the procedural defaults. Accordingly, and in the interest of full disposition of the petition, the Court will address the issue.

Petitioners in Tennessee also can establish "cause" to excuse the procedural default of a substantial claim of ineffective assistance by demonstrating that post-conviction counsel was ineffective in failing to raise and exhaust a claim before the state courts. *See Martinez v. Ryan*, 566 U.S. 1, 5-6 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013); *Sutton v. Carpenter*, 745 F.3d 787, 792 (6th Cir. 2014). *Martinez* requires that the ineffective assistance of post-conviction counsel occur during the "initial-review collateral proceeding," and that "the underlying ineffective-assistance-of-trial-counsel claim [be] a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martizez,* 566 U.S. at 13-15. Importantly, *Martinez* did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default, and to establish prejudice, a petitioner must demonstrate that the constitutional error at issue

16

"worked to his <u>actual</u> and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (*quoting United States v. Frady*, 456 U.S. 152, 170 (1982) (*emphasis in original*)).

The *Martinez* exception fails to excuse the procedural default of Petitioner's four ineffective assistance of counsel claims because the claims are not substantial. *See Woolbright v. Crews*, 791 F.3d 628, 637 (6th Cir. 2015). Clearly, the State's use at trial of the video of Petitioner's police interview was an issue that was contested prior to trial. The trial record shows that counsel filed a motion *in limine* prior to trial to exclude the introduction of parts of the video that the State intended to play to the jury,[9] and it is apparent from trial counsel's testimony at the post-conviction relief hearing that counsel had viewed the video and was aware of its contents.[10] Although counsel filed the motion *in limine*, counsel stated that there was no basis for suppression of the statement.[11] Further, it is apparent that the content of the full video contained statements from Petitioner about several different robberies,[12] and the motion *in limine* acknowledges, in a veiled manner, that establishing the context for the video clips that were played would require introduction of propensity evidence that Petitioner's defense was seeking to exclude.[13] Additionally, it is likewise apparent, as was found by the state appellate court in hearing Petitioner's direct appeal,[14] that the trial court

---

[9] *See* Docket Entry No. 47-1 at 17-18.

[10] *See* Docket Entry No. 47-15 at 27-28.

[11] *Id.*

[12] *Id*. at 28.

[13] *See* Docket Entry No. 47-1 at 18.

[14] *See Abdi III*, at * 5,

directly addressed the issue of playing the entire video versus playing redacted clips from the video and the possible prejudice that would arise toward Petitioner had the entire video been played.[15]

In the end, Petitioner offers no support for his contention that his trial counsel was ineffective in any of the four ways that he alleges. His trial counsel was presented with a situation in which playing part of the video of the police interview was not favorable for Petitioner, yet playing the entire video was likewise not favorable, and possibly worse, for Petitioner. Counsel took steps to exclude the redacted video clips from being played at trial and, when unsuccessful, she took steps to limit the weight that should be afforded the video clips through cross-examination of the police officer who conducted the interview.[16] Petitioner has not presented any argument that the statement suffered from a legal defect that rendered it subject to being suppressed as a whole, and he has not offered any plausible argument how counsel's actions were ineffective or how he was actually and substantially prejudiced by the allegations of ineffectiveness. As such, there is no basis to excuse the procedural default of these claims and *habeas corpus* relief is not warranted of the claims.

C. Ground 3 - Failure of Trial Counsel to Obtain Exculpatory Evidence

This ground for relief is based on Petitioner's allegation that his trial counsel was deficient in not obtaining the surveillance video of the crime scene, which Petitioner believes was exculpatory and should have been provided to his defense. In his petition, Petitioner makes the specific contention that the Tennessee Court of Criminal Appeals failed to rule on the issue of whether his

---

[15] *See* Transcript of Motion for New Trial (Docket Entry No. 47-20).

[16] *See* Docket Entry No. 47-3 at 93-98.
*Se*

trial counsel was ineffective for not challenging the failure of the State to preserve and turn over the surveillance video. *See* Petition at 6. However, this contention is inaccurate.

The state appellate court addressed this claim of ineffective assistance of counsel on the merits in its decision denying Petitioner's appeal from the denial of post-conviction relief. *See Abdi II*. at \*\* 6-7. In determining the claim, the state appellate court reviewed: (1) the trial testimony from a police detective that the video at issue did not capture the robbery and, thus, was not turned into the police property and evidence room; and, (2) trial counsel's testimony from the post-conviction relief hearing that counsel's understanding was that the surveillance video "was not the correct time" and "did not show anything." *Id*. at \*6. After noting that Petitioner had not proffered the surveillance video during the post-conviction proceeding, the state appellate court found that Petitioner had not shown that he suffered prejudice because of trial counsel's alleged failure to ensure production of the surveillance video. *Id*. at \* 7.

Because the state appellate court ruled on the merits of Petitioner's underlying claim of ineffective assistance of counsel with respect to the surveillance video, Petitioner can obtain relief on this claim only by showing that the state appellate court's decision on the claim was contrary to federal law, involved an unreasonable application of such law, or was based on an unreasonable determination of the facts in light of the record before the state court. *Harrington*, 562 U.S. at 100. Petitioner has not satisfied any of these showings. The facts regarding the video as found and relied on by the state appellate court are entitled to a presumption of correctness that has not been rebutted by a showing of clear and convincing contrary evidence by Petitioner. *Mitchell*, *supra.* Further, the state appellate court's application of *Strickland* to these facts and its ultimate conclusion that Petitioner had not established the existence of any prejudice arising from the alleged deficient

performance of counsel was not contrary to established law, an unreasonable application of the law, or based upon an unreasonable determination of the facts. In the absence of a showing by Petitioner that the state appellate court's application of *Strickland* to his claim was unreasonable, Petitioner is not entitled to federal *habeas corpus* relief on the basis of this claim, however he frames his claim.

## RECOMMENDATION

Based on the foregoing, the undersigned respectfully RECOMMENDS that the Petition for Habeas Corpus Relief be DENIED and this action be DISMISSED.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge